UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND


CIVIL ACTION NO. 09-88-GWU


RICK LAYNE,                                                                   PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


**INTRODUCTION**

Rick Layne brought this action to obtain judicial review of an unfavorable

administrative decision on his applications for Disability Insurance Benefits and for

Supplemental Security Income.  The case is before the court on cross-motions for

summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

1

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

09-88  Rick Layne

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

4

then an award of benefits may, under certain circumstances, be had.  E.g.,  Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The Administrative Law Judge (ALJ) concluded that Layne, a 53-year-old former laborer with a "limited" education, suffered from impairments related to degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease and a learning disorder.  (Tr. 12, 16).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 14, 16).  Since the available work was found to constitute a significant number of

jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 16-17).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 17).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Joe Woolwine included one of Layne's age and work background with an eighth grade education limited exertionally to medium level work, restricted from a full range by such non-exertional limitations as (1) an inability to more than occasionally climb, balance, crouch, crawl, stoop, or kneel; (2) a need to avoid concentrated exposure to extreme cold or heat, fumes, dust, odors and gases; (3) an inability to perform work requiring the ability to read or write; and (4) a limitation to work that can be learned by demonstration and requiring no more than one or two steps.  (Tr. 48). In response, Woolwine identified a number of light and sedentary level jobs which could still be performed.  (Tr. 48-49).  The ALJ then added a limitation concerning an inability to perform overhead work.  (Tr. 49).  The expert reported that this would not affect the available job numbers.  (Id.).  The ALJ later removed the postural restrictions from consideration.  (Tr. 50).  Woolwine testified that this change would permit performance of medium level work and went on to identify a significant

number of medium level jobs which could still be performed.  (Id.).  The ALJ relied upon this later testimony to support the administrative decision.  (Tr. 16-17).  Therefore, assuming that the vocational factors considered by Woolwine fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. Kip Beard examined Layne in April of 2007 and noted a diagnostic impression of dyspnea, chronic tobacco abuse, possible chronic obstructive pulmonary disease, chronic thoracolumbar pain, chronic arthralgias, chronic dyspepsia and a reported history of blood in the stool. (Tr. 188).  Dr. Beard did not impose any physical restrictions and specifically indicated that the plaintiff retained the ability to see, hear, speak, handle objects, sit, stand, move about, lift, carry and travel.  (Id.).  The ALJ's findings were compatible with this opinion.

Dr. Jorge Baez-Garcia reviewed the record in July of 2007 and opined that Layne did not suffer from a "severe" physical impairment.  (Tr. 261).  This opinion also strongly supports the administrative denial decision.

Layne was treated at the emergency room of the St. Claire Regional Medical Center in April of 2008.  (Tr. 269-274).  Greg Sy, a physician's assistant, indicated that the plaintiff should not lift more than ten pounds, could not stoop or bend and

should not perform prolonged sitting or strenuous activity.  (Tr. 274).  These are far more severe physical restrictions than those found by the ALJ.  The ALJ did not give the report great weight for several reasons, including the lack of physical findings such as radiculopathy.  (Tr. 15-16).   The court notes that under the federal regulations, a physician's assistant is not an "acceptable medical source" whose opinion is binding on the administration.  20 C.F.R. § 404.1513.  Therefore, the court finds no error.

In May of 2008, Layne underwent an MRI scan of the lumbar spine at King's Daughters Hospital.  The MRI revealed a loss of lumbar lordosis, disc dessication at multiple levels with mild to moderate degenerative facet disease, and disc bulges at L2-L3 and L3-L4.  (Tr. 265-266).  The possibility of arachnoiditis versus clumping of nerve roots due to moderate central canal stenosis was suggested.  (Tr. 266).  The plaintiff asserts that since Dr. Beard did not have the opportunity to see this testing result, the ALJ could not rely upon his opinion.  However, the court notes that the report from King's Daughters imposes no specific functional restrictions.  As noted by the defendant, the mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown.  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  These findings do not necessarily indicate the existence of more severe functional limitations than found by the ALJ.  Therefore, the court finds no error.

The ALJ also dealt properly with the evidence of record pertaining to Layne's mental status.  Psychologist Courtney Spear examined the plaintiff and diagnosed a learning disorder.  (Tr. 182).  Spear opined that the claimant would have difficulty with complex instructions but would have the ability to sustain attention for simple, repetitive tasks, particularly if he was able to have practice opportunities. (Id.).  The examiner indicated that Layne demonstrated adequate social skills and would not have difficulty with interacting one-on-one or in group settings.  (Id.).  Spear reported that the plaintiff did not have difficulty with stress and changes from task to task and would not be likely to have problems with these in a work setting.  (Id.).  The ALJ's limitations to jobs requiring only one or two steps and which could be demonstrated was compatible with this opinion.

Psychologists Jan Jacobson (Tr. 190-191) and Ilze Sillers (Tr. 252-253) each reviewed the record and opined that Layne would be "moderately" limited in handling detailed instructions and responding appropriately to changes in the work setting.  The mental factors of the hypothetical question were essentially consistent with these opinions.

Layne argues that he should have been found disabled under Rule 202.09 of the Medical-Vocational Guidelines.  This rule mandates a finding of disabled status for one closely approaching advanced age,  restricted to light level work and illiterate.  He asserts that there was no evidence to support the ALJ's finding that he

could perform medium level work.  However, Dr. Beard specifically found no physical restrictions.  (Tr. 188).  Dr. Baez-Garcia did not believe the plaintiff suffered from a "severe" physical impairment.  (Tr. 261).  The physician's assistant at King's Daughters who did impose significant exertional restrictions was not an "acceptable medical source."  Therefore, the medical record provides strong support for the ALJ's finding that a restricted range of medium level work could still be done.

Layne also asserts that the fact the ALJ found that he could not return to his past work, performed at the medium to very heavy level, proves that he could not perform medium level work.  Woolwine testified that the plaintiff's past work as a laborer had been heavy to very heavy in exertion (Tr. 48) and, so, it obviously could not have been performed by one limited to medium level work.  The witness indicated that the job of laundry worker had been medium in exertion.  (Id.).  However, the court notes that the hypothetical question included a number of mental and physical non-exertional restrictions which eliminated this type of work.  (Id.).  As previously noted, the vocational expert identified a number of other medium level jobs which could still be performed.  (Tr. 50).  Therefore, the court finds that the claimant failed to prove he could not perform at least a restricted range of medium level work consistent with the vocational factors found by the ALJ.

Layne also argues that the ALJ erred in finding that he was not illiterate.  The ALJ relied upon his eighth grade level of formal education in making this

determination and ignored achievement testing administered by Spears which revealed that the claimant functioned at the kindergarten level in word reading and at the first grade level in spelling.  (Tr. 181).  However, even if the plaintiff suffered from illiteracy, Rule 202.09 would not apply since he was properly found able to perform medium level work rather than restricted to light level work.  Rule 203.18 of the Medical-Vocational guidelines would apply instead and mandate a finding of not disabled.  No need to be able to read and write was included among the hypothetical factors presented to Woolwine.  (Tr. 48).  Therefore, any error in failing to find that the claimant was illiterate was harmless.

Layne argues that the ALJ did not properly evaluate his subjective pain complaints.  Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Layne was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  The ALJ noted that the plaintiff usually took over-the-

counter pain medication and there was no sign of radiculopathy.  (Tr. 15).  The ALJ noted that despite the claimant's breathing problems, he had continued his cigarette smoking habit.  (Id.).  Dr. Beard's physical examination revealed a normal range of motion in the lumbar spine.  (Tr. 187).  Neurological examination revealed no sign of muscle weakness.  (Id.).  Neither Dr. Beard nor Dr. Baez-Garcia imposed functional restrictions.  While the lumbar MRI scan from King's Daughters did reveal abnormalities, more severe functional restrictions than those found by the ALJ were not imposed.  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated Layne's pain complaints.

The administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 14th day of July, 2010.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

13